SARAH M. RAMSBURG, by her husband and next friend NEWTON A. RAMSBURG *vs.* LAURA CAMPBELL, by her husband and next friend ROBERT CAMPBELL.

*Credibility of Evidence—Acknowledgment of a Mortgage before a Justice of the Peace, repudiated by the Mortgagors and affirmed by the Justice who took it.*

Where, in a proceeding to obtain an injunction against the sale of mortgaged premises under a decree, on the ground that the mortgage, though regular on its face, was not acknowledged as it purported to be before a justice of the peace, and the justice being examined as a witness, and looking at the original mortgage filed in the case, identified his signature as a witness and said, he saw each of the parties sign the same, and identifying his signature as a justice of the peace to the certificate endorsed on the mortgage, said he took the acknowledgment of the mortgagors, husband and wife, at their house on a certain street, naming it, and the mortgagors denied that the justice was ever at their house, and the mother of the wife corroborated them, credit should be given to the justice, rather than to those who would repudiate their own acts.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ROBINSON and IRVING, J., for the appellee, and submitted on brief for the appellant.

*Edgar H. Gans*, for the appellant.

*W. B. Trundle*, for the appellee.

Bowie, J., delivered the opinion of the Court.

In the month of March, 1877, Messrs. Campbell & Ramsburg, partners in trade, failed in business, and became applicants for the benefit of the Bankrupt Act.

Their wives, Laura Campbell and Sarah M. Ramsburg, being each possessed of a separate estate through their respective agents, entered into an agreement, that Mrs. Campbell should purchase the claims of the creditors of Campbell & Ramsburg, at the rate of seventy-five cents on the dollar, amounting to the sum of $16,985, for one-half of which she should be indemnified by Sarah M. Ramsburg, and that the said Sarah, should be entitled to recover one-half of the dividends to be realized from said claims, beyond the amount necessary to pay said sum.

In consummation of this agreement, as a security for the sum of two thousand dollars, part of the indemnity aforesaid, a mortgage dated the 20th of October, 1877, reciting the agreement aforesaid, and that Mrs. Campbell, had paid $3000 in cash and executed a mortgage to Wm. A. Fisher, as trustee for the creditors, to secure the sum of $13,985.85, and that it was agreed as part of the indemnity aforesaid these presents should be executed, was signed and sealed by Mrs. Ramsburg and her husband, and ostensibly acknowledged in due form of law, before a justice of the peace of the City of Baltimore, and delivered to Wm. A. Hammond, Esq., agent and attorney for Mrs. Campbell, by Newton A. Ramsburg, one of the mortgagors, or by the justice of the peace, with his privity and consent.

The mortgage of the Ramsburgs, purported in consideration of the premises above recited, and therein set forth to convey certain leasehold property in the City of Baltimore to Laura Campbell, her executors and administrators, with the proviso, that if Sarah M. Ramsburg should pay to Wm. A. Hammond, trustee of Laura Campbell, one-half of said sum of $13,985.85, secured to be

paid to Wm. A. Fisher, trustee, for said creditors, by mortgage from said Laura on or before the 18th of October, 1878, etc., and should fully indemnify and save harmless the said Laura, as to one-half of said mortgage debt, and perform the covenants therein contained, on her part to be performed, the same should be void. The mortgagors, also assented thereby to the passage of a decree by any Court of competent jurisdiction for the sale of the mortgaged premises according to the provisions of the Public Local Code, etc., and contained the usual provisions for a sale of the premises in case of default.

Mrs. Ramsburg, through her husband, Newton A. Ramsburg, on the 20th October, 1877, paid to Mr. Hammond, trustee for Mrs. Campbell, $3500 in cash, and delivered certain stocks, to be sold, at such times as should seem most advantageous, and the proceeds, together with the sum of $2000, (secured by mortgage) to be applied to the payment of one-half the mortgage debt, secured by the mortgage of Mrs. Campbell to Fisher, trustee, for the creditors of Campbell & Ramsburg; the other $1500 to be paid at once to said Fisher as trustee as aforesaid, as one-half of the $3000, agreed to be paid in cash, besides the mortgage above referred to. Mrs. Campbell's mortgage to Fisher, was paid in full by Hammond as her trustee, with funds derived partly from money raised by Mrs. Campbell, and partly from the sale of the stocks of Mrs. Ramsburg, and cash received from Mrs. Ramsburg, and partly from collections from claims purchased, but Mrs. Ramsburg's proportion of payments being short, and the time allowed for the payment of the $2000 indemnity, secured by the mortgage of Ramsburg, having expired, the appellee, by her next friend, filed her petition on the 3rd of November, 1879, in the Circuit Court of Baltimore City, with the original mortgage annexed, alleging there was a default, and praying a decree for sale. A decree for sale was passed

on the 4th of November, 1879, and on the 29th of same month, the appellant, Sarah M. Ramsburg, her husband as next friend, filed in the same Court, a bill against the mortgagee and Robert Campbell, her next friend, praying that an account be had, that the sale may be stayed by injunction, *subpoenas*, etc. An injunction was issued as prayed. Answers being filed, the cause was referred to the auditor to take testimony, and state an account, and after various intermediate orders and proceedings, the auditor's account being amended and filed, it was on the 25th of May, 1880, ordered by the Circuit Court of Baltimore City, in the case of *Campbell, et al. vs. Ramsburg*, that the defendant bring into said Court on or before the 14th of June, 1880, the sum of $2090.14, to be paid to the complainant, (Laura Campbell) and in default thereof, it is further ordered, that the injunction be dissolved, and the mortgage premises sold by the trustee, etc.

From which decree this appeal is taken. The two cases seem both in the Court below, and in this Court, to have been treated as one, and we shall consider them as such, although the record shows no order of consolidation.

The grounds for the injunction as alleged in the bill of the Ramburgs, are substantially: 1st. That the mortgage of the 20th of October, 1877, on which the decree for sale was rendered, although signed by the complainant, Sarah, was not acknowledged by her before any justice of the peace, in conformity with the laws of Maryland, relating to mortgages by *femes covert;* that she never appeared before, and never made the acknowledgement of said paper as her act and deed, before Justice Hemmick, or any other justice of the peace.

2ndly. That she does not owe anything under said mortgage.

It is understood by the Court, that the latter point is abandoned in this Court, and the first alone relied on.

Ramsburg *vs.* Campbell.

The allegation of the appellant, Sarah, that she never acknowledged the mortgage before Justice Hemmick, or any other justice of the peace, involving as it does, a charge of gross misconduct and criminal violation of duty, on the part of the certifying justice, must be sustained by strong disinterested preponderating evidence. 1 *Greenleaf,* 106.

The burden of proof is upon the appellant. The justice of the peace, is an officer invested with high ministerial and judicial powers ; one of the most important of which is, the power to take and certify the acknowledgment of deeds and other instruments, upon the validity of which the titles to all real estate and vast amounts of personal property depend. If the verity of their acts can be impeached by the negative testimony of the parties interested to destroy the deed, the most disastrous consequences might ensue.

In some of the earlier cases, where the question arose, it was held that no evidence could be received to invalidate the acknowledgment of a deed. *Bissett vs. Bissett,* 1 *H. & McH.,* 211.

In *Ridgely vs. Howard,* 3 *H. & McH.,* 321, where it appeared by the certificate of acknowledgment, that the grantor on a particular day appeared before *two* justices of the peace, and acknowledged the same, parol evidence to prove that the justices took the acknowledgment separately, at different times and places, was held inadmissible. See also *Gitting's Lessee vs. Hall,* 1 *H. & J.,* 14; *Miles vs. Knott,* 12 *G. & J.,* 455.

In more recent cases the rule has been relaxed, still great sanctity must be attached to official acts essential to the validity of all deeds of real and personal estate, (with few exceptions) and the indispensable preliminary to their registration.

The deed on its face, purports to have been signed and sealed by the grantors, and attested by George A. Hem-

mick, and the attesting witness, George A. Hemmick, as a justice of the peace, certifies that on the 20th of October, 1877, the grantors appeared before him, and each acknowledged the foregoing mortgage to be their respective act. The justice of the peace being examined as a witness, and looking at the original mortgage filed in the case, identifies his signature as a witness, and says he saw each of the parties sign the same, and identifying his signature as justice of the peace to the certificate endorsed on the mortgage, says he took the acknowledgment of Mr. and Mrs. Ramsburg, at their house on Chatsworth street, or Myrtle avenue as it is called now. Mr. and Mrs. Ramsburg deny that the justice ever was at their house, and the mother of Mrs. Ramsburg corroborates them.

It is not proposed to institute a comparison of the evidence of the several witnesses. Independently of the rule, that affirmative evidence is to be preferred to merely negative assertion, the presumption of law is, that every officer discharges his duty until it is clearly shown to the contrary.

His signature to the documents, is *prima facie* evidence of the truth of the facts certified. His official character, his habit of business, his entire disinterestedness, added to the written evidence on the face of the paper make it impossible he should be mistaken as to the facts deposed and establish their truth, unless he has wilfully forsworn.

The testimony impeaching the justice proceeds from prejudiced persons, having a large pecuniary interest in the result, and is contradicted in several particulars.

In the case of *Sarlouis vs. The Firemen's Insurance Co.* where the return of a sheriff's deputy was impeached, this Court said: "The affirmative testimony of a public officer acting in the regular routine of his duty, without any motive to misrepresent, sustained by contemporaneous entries in his own hand, must be preferred to the negative evidence of employés of the garnishee corporation,

from public policy as well as upon the rules of probability."
45 *Md.*, 244.

The same considerations of policy and probability compel us in this case, to give credit to the justice who attested and certified the acknowledgment of the mortgage, rather, than to those who would repudiate their own acts.

Finding no error in the decree appealed from, the same will be affirmed with costs to the appellee.

*Decree affirmed.*

(Decided 14th January, 1881.)